UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                          :
BENJAMIN HOLMES, a/k/a
BENJAMIN HOMES,                        :        02 Civ. 5610 (BSJ) (DF)

                                       :        **REPORT AND**
                        Petitioner,             **RECOMMENDATION**
                                       :
          -against-
                                       :
MICHAEL J. BINTZ, SUPERINTENDENT,
                                       :
                        Respondent.
                                       :
-------------------------------------------------------------X

**TO THE HONORABLE BARBARA S. JONES, U.S.D.J.:**

*Pro se* petitioner Benjamin Holmes ("Petitioner") seeks a writ of habeas corpus under

28 U.S.C. § 2254, following his 1999 conviction upon a guilty plea of Criminal Sale of a

Controlled Substance in the Third Degree, in violation of N.Y. Penal L. § 220.39(1).  Petitioner

was sentenced on this conviction, as a second felony offender, to an indeterminate term of

imprisonment of three to six years.  Petitioner was released on parole on July 12, 2005.[1]

In his Petition and accompanying memorandum, Petitioner raises a number of claims,

primarily centering on allegations that his arrest was unlawful and that the indictment charging

him with a drug crime was legally defective, depriving the trial court of jurisdiction; that the

---

[1] The Court notes that Petitioner's release does not, in itself, moot his petition.  As
Petitioner remains subject to "collateral consequences" from that conviction, he has "a
substantial stake in the judgment of conviction which survives the satisfaction of the sentence
imposed on him."  *Carafas v. LaVallee*, 391 U.S. 234, 237 (1968) (giving examples of collateral
consequences, including the inability to vote, serve as a juror, or engage in certain businesses)
(internal quotation marks omitted); *see also Spencer v. Kemna*, 523 U.S. 1, 7-8 (1998) (noting
that collateral consequences of wrongful conviction are presumed to exist, even if "remote and
unlikely to occur" (citing *Sibron v. New York*, 392 U.S. 40, 55-56 (1968))).

State failed to perform or produce a timely laboratory drug analysis, as required by state law, and misrepresented to the trial court that the laboratory analysis had been done; that the State's failure to produce a laboratory report within the statutory time frame effectively deprived Petitioner of his right to a speedy trial; and that his trial counsel failed to raise certain of these arguments on his behalf prior to his plea. Petitioner argues that, under the circumstances, the case against him should have been dismissed, and his plea should be regarded as coerced. For his part, respondent Michael J. Bintz ("Respondent"), the Superintendent of Riverview Correctional Facility, where Petitioner was incarcerated at the time he filed his petition, argues that Petitioner's claims should be dismissed as untimely, procedurally barred, and, in any event, without merit.

For the reasons set forth below, I recommend that the petition for a writ of habeas corpus be dismissed in its entirety.

## BACKGROUND

### A.    Petitioner's Arrest and Pre-Trial Proceedings

Petitioner was arrested on January 12, 1999, in Upper Manhattan, and charged with selling heroin, in a hand-to-hand transaction, to an undercover police officer. (*See* Felony Complaint, dated Jan. 13, 1999 (attached as Ex. 1 to the Amended Petition, dated Oct. 7, 2002 ("Am. Pet") (Dkt. 5)).)

On February 17, 1999, Petitioner, through counsel, filed a motion with the trial court (the Supreme Court of the State of New York, County of New York) requesting, *inter alia,* that the court review the grand jury minutes to ascertain whether the State had presented legally sufficient evidence to support the charges in the indictment, and that the court dismiss the

indictment if it were found to be defective.  (*See* undated Declaration of Malancha Chanda in

Support of Motion to Dismiss Petition for a Writ of Habeas Corpus ("Chanda Decl.") (Dkt. 16),

Ex. A.)  In the same motion, Petitioner also sought to suppress physical evidence and

identification testimony on the ground that there was no probable cause for Petitioner's arrest.

(*See id.* at 7.)

On July 23, 1999, the trial court held a combined *Mapp/Wade* hearing,[2] at which Police

Officer George Bender ("Bender") testified regarding Petitioner's arrest.  (*See* Transcript of

*Mapp/Wade* Hearing, conducted July 23, 1999 ("*Mapp/Wade* Tr.").)  Bender testified that he

served as the arresting officer in the "buy and bust" operation that resulted in Petitioner's

apprehension.  (*Id*. at 13.)  Bender further testified that he had been assisted in the operation by

two undercover officers, one of whom made the actual drug purchase, and the other of whom

acted as a "ghost," to follow the first undercover officer and provide information as to what was

happening.  (*Id*. at 14.)  According to Bender, both undercover officers transmitted information

to him over a "Kel" communications device, during the course of the operation.  (*Id*. at 15.)

After the drug transaction took place, the first undercover officer informed Bender that he had

made a "positive buy" and provided information regarding the location of the buy (31 West

127th Street), as well as a brief description of the seller and his clothing (a "[b]lack male with a

black jacket [and] blue jeans").  (*Id*. at 15-16.)  Similarly, the "ghost" officer radioed to Bender

that he had seen the first undercover officer speaking with an individual wearing a black jacket.

_____

[2] This hearing was held pursuant to *Mapp v. Ohio*, 367 U.S. 643 (1961), to determine
whether evidence was obtained in violation of Petitioner's Fourth Amendment right to be free
from unreasonable search and seizure, and *United States v. Wade*, 388 U.S. 218 (1967), to
determine whether Petitioner's pretrial identification was the result of impermissibly suggestive
procedures.

(*Id*. at 17.)  The ghost told Bender to "hold off for a while because that individual [had] entered the building for a few minutes."  (*Id*.)  When the suspect "came back out of the building," the ghost told Bender that "the guy, the individual, was walking westbound towards 127th [Street] and Lenox Avenue."  (*Id*.)

Bender testified that he then drove to the corner of 127th Street and Lenox Avenue, where he observed someone fitting the description of the seller.  (*Id*.)  The ghost reportedly told Bender, "Keep going.  Keep going.  That's the guy right there on your right, black jacket."  (*Id*.)  Bender then apprehended Petitioner, who was wearing a long black jacket and blue jeans, and who was the only one at the location fitting the description that Bender had been given.  (*Id*. at 18.)  After handcuffing Petitioner, Bender placed him into a "prisoner van," and Petitioner was driven to Park Avenue, where, according to Bender, a "confirmatory I.D. procedure [was] done."  (*Id*. at 19.)  Specifically, Petitioner was taken out of the van to a well-lit area (*id*. at 19, 33), and "he was told to look up" so that the undercover officer could see him (*id*. at 19-20).  The undercover then informed Bender by radio that "that was the guy."  (*Id*. at 20.)

Bender testified at the hearing that, at the time of Petitioner's arrest, Petitioner had a five dollar bill in his hand, which was not pre-recorded buy money.  (*Id*. at 21-22.)  Bender searched Petitioner, but no other money and no drugs were recovered from him.  (*Id*. at 29-30.)

At the close of the hearing, the trial court denied Petitioner's motions under *Mapp* and *Wade*, finding Bender's testimony to be credible (*id*. at 34), and concluding that Petitioner's arrest was valid, that the search resulting in the recovery of the five dollar bill was attendant to that valid arrest, and that the identification procedure conducted at Park Avenue was confirmatory in nature (*id*. at 36).

On July 24, 1999, Petitioner filed a *pro se* motion with the trial court, seeking to dismiss the indictment against him on the grounds that it was not supported by sufficient evidence and that the prosecution did not timely produce a lab report regarding the controlled substance purportedly at issue, as required by Section 715.50 of the New York Criminal Procedure Law ("N.Y.C.P.L.").  (*See* Chanda Decl, Ex. B.)

On July 26, 1999, Petitioner appeared before the trial court and his counsel renewed that motion orally on Petitioner's behalf.  (*See* Transcript of Plea Proceedings, conducted July 26, 1999 ("Plea Tr.") at 2.)  The court treated the motion as two-fold, challenging both (1) the sufficiency of the grand jury minutes to the extent the grand jury was not provided with a laboratory analysis of the drugs in question, and (2) the prosecution's alleged failure to conduct a laboratory analysis within the 45-day deadline specified by state law.  With respect to the first part of the motion, the court stated that it had reviewed the grand jury minutes and had verified that testimony had been presented to the grand jury "as to the field testing of the drugs and as to the reliability and expertise of the testifying officer in that regard."  (*Id*. at 3-4.)  With respect to the second part of the motion, the court accepted a representation, made in court by the prosecution, that a laboratory analysis had in fact been performed within 45 days of receipt of the drugs, even though the report of that analysis had not yet been produced.  (*Id*. at 3.)[3]  For these reasons, the court denied the motion.  (*Id*.)

---

[3] Among the exhibits attached to the Amended Petition is a copy of a laboratory drug analysis dated July 29, 1999, the date of this pre-trial hearing (*see* Am. Pet., Ex. 2), suggesting that the analysis was not actually done until more than six months after the drugs were recovered.

**B.**   **Petitioner's Guilty Plea**

Upon the denial of his pretrial motions, Petitioner decided to accept a plea offer made by the prosecution, and he pleaded guilty to attempted criminal sale of a controlled substance, a Class C felony, in full satisfaction of the indictment.  (Plea Tr. at 4-8.)  Prior to accepting the plea, the court conducted a plea allocution, through which it confirmed that Petitioner had engaged in a narcotics transaction.  Specifically, upon questioning by the court, Petitioner admitted that, on January 12, 1999, in the area of Lenox Avenue and 127th Street (in Upper Manhattan), he had sold a narcotic drug[4] to an undercover police officer:

> THE COURT: You handed over some drugs and an individual handed you money.  That individual turned out to be a police officer, correct?
>
> THE DEFENDANT: Yes, sir.

(*Id*. at 5-6.)

The court further confirmed that Petitioner understood that, by pleading guilty, he was giving up his right to a trial by jury, at which he would be represented by counsel.  (*Id*. at 6.) Petitioner also acknowledged that he understood that he would be giving up his right to remain silent, and that, if his case were to proceed to trial, the prosecution would have the burden of proving his guilt beyond a reasonable doubt.  (*Id*.)

The court stated that, in exchange for Petitioner's plea, it was agreed that Petitioner would be sentenced to a prison term of three to six years.  (*Id*.)  Petitioner confirmed that no other promises had been made to him, that he had discussed the plea with his counsel, and that

---

[4] Although the drug at issue is not identified in the plea allocution, the Felony Complaint charged that the drug was heroin.  (*See* Am. Pet. at Ex. 1.)

no one had forced him to plead guilty or threatened him in that regard.  (*Id.* at 6-7.)  Petitioner

also confirmed his understanding that, if convicted at trial, he would face a minimum term of

incarceration of two-and-one-half to nine years, and would likely face a higher sentence than that

because of his prior criminal record.  (*Id.* at 7.)  Finally, the court stated that, upon Petitioner's

plea, it would recommend at sentencing that Petitioner be placed in an appropriate drug

treatment program.  (*Id.*)

Petitioner was then arraigned on a predicate felony statement, and Petitioner stated that

he did not dispute that he had previously been convicted (in 1998) of attempted burglary in the

third degree.  (*Id.* at 8-9.)  On that basis, the court found Petitioner to be a predicate felon.  (*Id.*

at 9.)

### C.      **Petitioner's Sentencing**[5]

On August 12, 1999, in accordance with his plea agreement, Petitioner was sentenced to

an indeterminate prison term of three to six years.  During the sentencing proceeding, the State

apparently conceded that the drugs that Petitioner purportedly sold had actually *not* been tested

by a laboratory within 45 days, despite the State's representation to the contrary at the time of

Petitioner's plea.  The court, however, apparently again denied a motion by Petitioner to dismiss

the indictment on that ground.

---

[5] As this Court has not been provided with a copy of the sentencing hearing transcript, the
facts in this section are taken from the Respondent's memorandum of law in support of its
motion to dismiss the petition and Petitioner's version of the facts, which are consistent.  (*See*
Respondent's Memorandum of Law in Support of Motion To Dismiss Petition for a Writ of
Habeas Corpus, dated May 31, 2006 ("Resp. Mem."), at 6; Am. Pet. at ¶ 5.)  Indeed,
Respondent's description of Petitioner's sentencing is apparently based on the facts set forth by
Petitioner's prior counsel in an appellate brief filed on Petitioner's behalf.  (*See* Resp. Mem. at 6
n.6; *see also* Ex. N of the Chanda Decl., Appeals Brief for Defendant-Appellate, dated July 26,
2000 at 5 (citing the August 12, 1999 Sentence Proceedings at 3-7.).)

D.     **Petitioner's Post-Conviction Motions**

     1.     **Motion To Vacate the Conviction**
            **Pursuant to N.Y.C.P.L. § 440.10**

On or about December 21, 1999, prior to perfecting a direct appeal, Petitioner filed a *pro se* motion before the trial court to vacate his conviction pursuant to Section 440.10 of the New York Criminal Procedure Law.  (Chanda Decl., Ex. C.)  In his Section 440.10 motion, Petitioner listed every potential ground for relief enumerated in that statute (*see id.* at 1; N.Y.C.P.L. § 440.10(1)), and it is somewhat difficult to parse his particular arguments.  As amplified by his later reply to the State's opposition (*see* Chanda Decl., Ex. E), it appears that Petitioner argued that the trial court lacked jurisdiction over him because the required laboratory report was never filed (*see* Chanda Decl., Ex. C at 2; Ex. E at 2 ); that, without laboratory corroboration that Petitioner had sold a controlled substance, the mere "hearsay" statement to that effect of an inadequately trained police officer, even combined with a drug field test, was insufficient to establish probable cause for Petitioner's arrest and to provide a sufficient basis for his indictment (*see* Chanda Decl., Ex. C at 3-4, 6; Ex. E, at 6-7); that the felony complaint should never have been brought against Petitioner in the first instance because it was "prefabricated" and the result of "some type of a conspiracy" (*see* Chanda Decl., Ex. C at 5 and "Attachment"; Ex. E at 7-8); that the prosecutor had engaged in misconduct by obtaining the flawed indictment, by failing to disclose to the court, prior to Petitioner's plea, that the charges were fabricated and that the evidence supporting the indictment was false and insufficient, and by making misrepresentations to the court regarding the adequacy of the evidence and the existence of a laboratory report (*see* Chanda Decl., Ex. C at 4-5; Ex. E at 4-6); that Petitioner's counsel was ineffective in neglecting Petitioner's case and in letting the case proceed to a plea under the

circumstances (*see* Chanda Decl., Ex. C at 5); and that, when no laboratory report was timely

filed, the charges against Petitioner should have been dismissed for violation of Petitioner's right

to a speedy trial (*see* Chanda Decl., Ex. C at 6; Ex. E at 2-3).

By Decision and Order dated July 28, 2000, the trial court, apparently without having

held a hearing, dismissed Petitioner's motion as without merit.  (Chanda Decl, Ex. F.)  As to

Petitioner's jurisdictional challenge, the court held:

> The defendant's challenge of jurisdiction based upon the
> failure of the People to submit to a Grand Jury results of a formal
> laboratory analysis of a substance in a drug-related prosecution is
> without legal effect.  CPL 190.30(2) does not required the People
> to present the Grand Jury with such a report.  The New York Court
> of Appeals has held that uncontradicted results of a preliminary
> field test indicating the presence of a controlled substance may
> provide legally sufficient evidence to support an indictment,
> though laboratory results would be required at trial to meet the
> People's burden of proof.  . . .  Here, the defendant pled guilty
> prior to going to trial.  The People, therefore, were under no
> obligation to present a laboratory report before such a plea was
> made or subsequently thereafter.  For these reasons, it is evident
> that the court properly exercised both subject matter and personal
> jurisdiction over the defendant.

(*Id*. at 2-3 (citation omitted).)  For similar reasons, the court also rejected Petitioner's claim that

a laboratory report was required for the indictment against him to be considered legally

sufficient, holding that such a report would have only needed to be furnished at trial to prove

guilt beyond a reasonable doubt (*id.* at 3), and that the lack of a report at the indictment stage

thus had no bearing on the question of the indictment's legal sufficiency (*see id.*).

The court also denied Petitioner's claims of prosecutorial misconduct and ineffective

assistance of counsel.  As to the former, the court found that the prosecutor had made no

misrepresentations to the court regarding the sufficiency of the indictment, as it was obtained by

"competent and admissible evidence." (*Id.*)  Specifically, the court noted that the testimony of

Officer Bender as to his own observations could not, as Petitioner contended, be deemed

"hearsay." (*Id.*)  Further, the court found that Officer Bender had "extensive drug-related work

and comprehensive training," rendering baseless Petitioner's contention that the officer lacked

sufficient experience to allow a grand jury to rely on his testimony. (*Id.*)  As to Petitioner's

ineffective assistance claim, the court noted that "[i]t is the defendant's burden to prove

ineffective representation[,] which requires more than a mere showing of disagreement with

defense counsel's strategies" (*id.* at 4), and concluded that Petitioner had not met his burden on

that claim (*id.*).

Finally, the court rejected the remainder of Petitioner's allegations as "completely

unfounded" (*id.*), and the remainder of the issues he raised as "without legal basis" (*id.*).

It appears that Petitioner did not appeal from the denial of his motion.  According to

Respondent, "[t]he First Department has no record of an appeal having been filed." (Resp. Mem

at 8 n.7.)

### 2.     Petition for Mandamus (Seeking Placement in a Drug Treatment Program)

On or about October 2, 2000, Petitioner filed a second motion with the trial court, this

time seeking a writ of mandamus, compelling the State to place him in the Willard Drug

Treatment Center ("Willard"). (Chanda Decl., Ex. H.)  At the time of Petitioner's plea, as noted

above, the trial court had promised to "recommend on the day of sentence that [Petitioner] be

given an appropriate drug treatment program while incarcerated" (Plea Tr. at 7), and the court

apparently made such a recommendation at sentencing (*see* Chanda Decl., Ex. G).  When the

New York State Department of Correctional Services ("DOCS") then failed to place Petitioner in

a drug treatment program, Petitioner argued that his plea agreement had been violated.  (*See* Chanda Decl., Ex. H (Affidavit in Support of Writ of Mandamus, sworn to Oct. 2, 2000).)   On October 20, 2000, the trial court denied Petitioner's motion without a hearing, ruling that "[t]he terms of the plea 'bargain' were complied with," and explaining that "[a]dmission into 'Willard' etc. is within the discretion of [DOCS]."  (Chanda Decl., Ex. I.)

It does not appear that Petitioner sought leave to appeal this ruling to the Appellate Division.

### 3. Mandamus Application to the Appellate Division (Seeking To Compel the Trial Court To Conduct a Hearing on Petitioner's Earlier Section 440.10 Motion)

On or about November 13, 2000, Petitioner filed an application for a writ of mandamus with the Appellate Division, seeking to compel the trial court to hold a hearing, not on Petitioner's claim that he was entitled to placement in a drug program, but rather on the various claims that Petitioner had raised in the earlier Section 440.10 motion that had been denied by the trial court in July 2000.  (*See* Chanda Decl., Ex. J (Notice of Motion for a Writ of Mandamus, dated Nov. 7, 2000).)  From a review of the parties' submissions, it appears that this application was the product of some confusion on Petitioner's part.  This Court's best understanding of what led up to the application is as follows:

The October 19, 2000 notice that Petitioner received from the trial court, informing him that his October 2, 2000 mandamus petition had been "calendared" for November 13, 2000, referred to that petition as a "Section 440 motion."  (*See* Am. Pet., Ex. 3 (Letter to Petitioner from Mary A. Price, ACC, Supreme Court – New York County, dated Oct. 19, 2000).)  It seems that Petitioner mistakenly understood this notice to mean that the Appellate Division had ordered

that he be afforded an evidentiary hearing on his earlier Section 440.10 motion, and that this

hearing was to be held on November 13.  When the trial court then "advanced" the calendar date

of Petitioner's mandamus petition, and dismissed that petition on October 20, 2000, Petitioner

believed that the trial court had effectively deprived him of the hearing on his Section 440.10

motion that had been ordered by the Appellate Division.  (*See* Chanda Decl., Exs. I, J.)  Thus,

Petitioner asked the Appellate Division to issue a writ of mandamus ordering the trial court to

conduct that hearing.

On January 16, 2001, the Appellate Division disposed of Petitioner's November 2000

mandamus petition by entering an order stating that, "upon the record and proceedings herein,

there is no question of law or fact presented which ought to be reviewed by the Appellate

Division."  (Chanda Decl., Ex. M.)  There is no indication in the record that Petitioner then

sought any further review of his claim that he had been denied a hearing.

### E.      Petitioner's Direct Appeal

Petitioner states in his Amended Petition that he filed a notice of appeal on August 13,

1999, the day after his sentencing.  It appears, however, that no direct appeal was ever perfected.

Rather, on July 31, 2000, Petitioner's appointed appellate counsel filed a brief before the

Appellate Division, First Department (Chanda Decl., Ex. N), asking to be relieved as counsel on

the basis that there were "no non-frivolous issues on appeal" (*id*. at 13).  Petitioner then wrote to

the Appellate Division, seeking leave to proceed *pro se* on a direct appeal, and requesting an

extension of time to perfect the appeal.  (*See* Chanda Decl., Ex. O; *see also* Ex. Q (Affidavit in

Support of Request To File a Supplement Brief).)  By decision dated March 22, 2001, the

Appellate Division granted Petitioner's counsel leave to withdraw and stated that, upon review

of the record, it agreed with assigned counsel that "there [were] no non-frivolous points which could be raised on this appeal." *People v. Holmes,* 281 A.D.2d 297, 722 N.Y.S.2d 153 (1st Dep't 2001) (copy attached to Chanda Decl. as Ex. R).  The court informed Petitioner of his right to apply for leave to appeal to the Court of Appeals, *see id.,* but it does not appear that Petitioner availed himself of that right.

### F.   Petitioner's Habeas Petition

Petitioner initially filed a habeas petition in this Court on May 28, 2001.  (*See* Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, dated May 28, 2001 ("Pet.").)[6]  On July 19, 2002, the Court (Mukasey, C.J.) directed Petitioner to amend his Petition within 60 days, so as to detail the steps he had taken to exhaust his claims, and stayed these proceedings in the interim.  (Dkt. 3.)  After obtaining one filing extension (Dkt. 4), Petitioner filed an Amended Petition on October 7, 2002, accompanied by a declaration (which he titled a "Memorandum of Law").  (Amended Petition, dated Oct. 7, 2002 ("Am. Pet.") (Dkt. 5) (copy attached to Chanda Decl. as Ex. S); Memorandum of Law, dated Oct. 7, 2002 ("Pet. Decl.") (Dkt. 6) (copy attached to Chanda Decl. at Ex. T).)[7]  On June 16, 2005, the case

---

[6] Although the Court's docket reflects a filing date of July 19, 2002 (*see* Dkt. 1), a *pro se* prisoner's papers are deemed filed when they are handed over to prison officials for forwarding to the court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988).  Here, based on Petitioner's signed declaration, made under penalty of perjury, that, on May 28, 2001, he delivered the petition to prison authorities to be mailed to the Court, the Court will deem the Petition to have been filed on that date.  *See, e.g.*, *Rhodes v. Senkowski*, 82 F. Supp. 2d 160, 165 (S.D.N.Y. 2000).  Given the substantial discrepancy in the purported mailing and docketing dates, the Court also notes that the original copy of the Petition bears a stamp indicating that it was received by the Court's *Pro Se* Office on May 31, 2001, only three days after Petitioner claims to have delivered it to prison officials for mailing.  (*See* Pet.)  Under the circumstances, it appears that there was a substantial delay in docketing the Petition from its time of arrival in the *Pro Se* Office.

[7] Once again, the Court deems the filing date of these papers to be the date when Petitioner declares that he delivered them to prison authorities for mailing to the Court, rather

was reassigned to Judge Jones, who referred it to me on November 18, 2005 for a report and

recommendation.[8]

In his Amended Petition, Petitioner lists 10 grounds on which he claims that he is entitled

to habeas relief, which, to the best of the Court's understanding (as informed by Petitioner's

accompanying memorandum of law), can be summarized as follows:

(1-2)   the police had no probable cause to stop Petitioner on two separate occasions
(Am. Pet. at 7);

(3)   the felony complaint against Petitioner demonstrates that, in connection with his
arrest, he was unconstitutionally stopped and "profiled," in that the faxed copy of
the complaint against him shows that it was faxed to the criminal court only
minutes after he was stopped by police, and before he was even placed in a line-
up (*id*. at 7-8);

(4)   the trial court lacked jurisdiction over Petitioner or the subject matter of the case
because the prosecution failed to conduct a timely laboratory analysis of the
alleged controlled substance sold by Petitioner, the prosecutor engaged in
misconduct by falsely stating on the record that a timely laboratory analysis had
been performed, and the court and defense counsel improperly urged Petitioner to
plead guilty based on the prosecutor's false statement (*id.* at 8-9);

(5)   the trial court lacked jurisdiction to proceed with Petitioner's sentencing in the
absence of Petitioner's counsel and when the court knew, by that date, that no
timely laboratory analysis had been performed (*id.* at 9-10);

(6)   despite being directed by the Appellate Division to conduct an evidentiary
hearing on Petitioner's motion to vacate the conviction, the trial court either failed
to conduct the required hearing or conducted it in Petitioner's absence (*id.* at 10);

(7)   the Appellate Division, after having directed the trial court to conduct a hearing
on Petitioner's claims, violated Petitioner's due process rights by then denying his
appeal from a decision that the trial court rendered without a hearing (*id*. at
10-11);

_____

than the filing dates shown on the docket.  (*See* n.6, *supra.*)

[8] This Order of Reference is not reflected on the Court's docket, although a subsequent
Order of Reference, dated April 16, 2007, is reflected.  (*See* Dkt. 21.)

14

(8) Petitioner received ineffective assistance of trial counsel because counsel failed to move before the trial court to dismiss the indictment for lack of jurisdiction and on the ground that Petitioner was denied a speedy trial (*id.* at 11);

(9) although the arresting officers allegedly never "took Petitioner out of their sights," they recovered no drug "buy money" from him, and, without either buy money or a laboratory drug analysis, there was insufficient evidence to support the charge against Petitioner (*id.*); and

(10) the trial court violated Petitioner's constitutional rights by denying his Section 440.10 motion without first conducting "due diligence" to determine whether a laboratory drug analysis even existed in his case (*id.* at 12).

On May 31, 2006, Respondent filed a motion to dismiss the Amended Petition, both on procedural grounds and on the merits.  (*See* Chanda Decl.; *see also* Respondent's Memorandum of Law in Support of Motion To Dismiss Petition for a Writ of Habeas Corpus, dated May 31, 2006 ("Resp. Mem.") (Dkt. 17).)  Petitioner then filed a *pro se* memorandum in opposition to the motion.  (A Memorandum of Law Pursuant to 28 U.S.C. Section 2254, dated Aug. 17, 2006 ("Pet. Opp. Mem.") (Dkt. 19).)  Respondent did not file a reply.

## **DISCUSSION**

## I. **PETITIONER'S CLAIMS SHOULD NOT BE DISMISSED AS TIME-BARRED.**

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a habeas petition must be filed within a one-year limitations period beginning on the latest of four dates, usually "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A) (2000); *see also Williams v. Artuz*, 237 F.3d 147, 150-51 (2d Cir. 2001) (judgment becomes "final" for purposes of Section 2244 upon "the completion of direct appellate review in the state court system and either the completion of certiorari proceedings in the United States Supreme Court, or – if the

prisoner elects not to file a petition for certiorari – [the expiration of] the time to seek direct review via certiorari").[9]

Here, although Respondent argues in its motion to dismiss the Amended Petition that Plaintiff's claims are time-barred (*see* Resp. Mem. at 14), Respondent's argument in this regard is based on an apparent misunderstanding as to the filing date of this action.  As noted above (*see supra* at 13 and n.6), the docket for this case reflects that the Petition was filed on July 19, 2002. If that filing date were correct, then Respondent would also be correct that Petitioner had commenced this habeas proceeding outside the one-year statute of limitations set out in AEDPA, which would have expired on April 21, 2002, one year after Petitioner's conviction became final on April 21, 2001.[10]  (*See* discussion in Resp. Mem. at 14-16.)  From the signature date on the Petition, however, as well as the *Pro Se* Office's stamp indicating that Office's actual date of receipt, it is apparent that the Petition was *not* actually filed with this Court in July 2002, but rather in May 2001, well within the one-year limitations period.  Thus, Petitioner's Complaint was timely, and the Amended Complaint cannot be dismissed on statute of limitations grounds.

---

[9] The limitations period may alternatively begin to run on the following dates, which are not applicable here:  (1) where the petitioner was prevented from filing an application by state action, the date on which the impediment is removed; (2) where the right asserted is a newly recognized one made retroactively applicable, the date on which the constitutional right asserted was initially recognized by the Supreme Court; and (3) the date on which the factual predicate of the claim presented could have been discovered through the exercise of due diligence.  *See* 28 U.S.C. § 2244(d)(1)(B)-(D).

[10] For Statute of Limitations purposes, it is appropriate to consider the Appellate Division's March 22, 2001 decision (finding no non-frivolous issue for appeal) as an affirmance of Petitioner's conviction, and thus his conviction became "final" at the expiration of the 30 days in which Petitioner could have sought leave to appeal that decision.  *See Crawford v. Costello*, 27 Fed. Appx. 57, 59 (2d Cir. 2001) (citing N.Y. Crim. P. Law § 460.10).

## II.     PETITIONER'S CLAIMS ARE SUBJECT TO DISMISSAL AS UNEXHAUSTED AND PROCEDURALLY BARRED.

A federal court may not consider a petition for habeas corpus unless a petitioner has exhausted all state judicial remedies.  *See* 28 U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997).  To satisfy the exhaustion requirement, a habeas petitioner must have "fairly presented" his claims to the state courts to afford them the "initial opportunity to pass upon and correct alleged violations of . . . [the] prisoners' federal rights."  *Picard*, 404 U.S. at 275 (citation omitted).

Petitioners can ensure that state courts are "alerted to the fact that [they] are asserting claims under the United States Constitution," *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995), by presenting their claims in a manner demonstrating one or more of the following:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) [an] assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) [an] allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye v. Atty. Gen. of New York*, 696 F.2d 186, 194 (2d Cir. 1982); *see also Petrucelli v. Coombe*, 735 F.2d 684, 688 (2d Cir. 1984).  Once the state courts are apprised of the constitutional nature of a petitioner's claims, the exhaustion requirement is fulfilled when those claims have been presented to "the highest court of the pertinent state."  *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994) (citing *Pesina v. Johnson*, 913 F.3d 53, 54 (2d Cir. 1990)).

### A.     Petitioner's Claims Are Unexhausted.

In this case, based on the record presented, all of Petitioner's claims appear to be unexhausted.  In his first Section 440 motion, Petitioner arguably raised his habeas claims 1-5

and 8-9 (relating to whether there was probable cause for his arrest and an adequate basis for both the felony complaint and the indictment, whether the alleged defect in the indictment deprived the trial court of jurisdiction, and whether the conduct of the prosecutor and Petitioner's own counsel prior to his plea were improper), but he apparently did not seek leave to appeal from the trial court's denial of that motion.  *See Reyes v. Phillips,* No. 02 Civ. 7319 (LBS), 2005 U.S. Dist. LEXIS 19488, at *11 (S.D.N.Y. Sept. 6, 2005) ("[I]n order to properly exhaust claims raised in an unsuccessful § 440.10 motion, a habeas petitioner must seek leave to appeal the denial of the motion to the Appellate Division." (citation omitted)).

Similarly, although Petitioner raised at least some variation of his habeas claims 6-7 and 10 (relating to whether he had been improperly denied an evidentiary hearing on his Section 440.10 motion, or whether the trial court had failed to develop the factual record before denying that motion) in his November 2000 mandamus application to the Appellate Division, it appears that Petitioner never sought leave to appeal the denial of that application to the Court of Appeals.  *See Aparicio v. Artuz*, 269 F.3d 78, 89-90 (2d Cir. 2001) (claim not exhausted unless presented to the highest court in the state).

Finally, although Petitioner sought leave to file a *pro se* brief on direct appeal, he did not seek leave to appeal to the Court of Appeals, when the Appellate Division declined to hear any direct appeal on the ground that the record presented no non-frivolous appellate issue.  *Cf. Galdamez v. Keane,* 394 F.3d 68, 74 (2d Cir. 2005) (where a defendant does not prevail in the Appellate Division on direct appeal, he must then seek leave to appeal to the Court of Appeals, in order to have exhausted his state court remedies for purposes of habeas review).

Thus, it seems that Petitioner did not pursue his various claims through all available avenues in the state courts.

### B.   The Claims Are Deemed Exhausted and Are Procedurally Barred.

Where a petitioner presents unexhausted claims, those claims should nonetheless be deemed exhausted if the petitioner no longer has an available remedy in state court. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Bossett,* 41 F.3d at 828-29 (citations omitted); *Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991) (citations omitted). In this case, it does not appear that any avenues are currently available to Petitioner to exhaust his claims.

Petitioner cannot now seek leave to appeal the trial court's denial of the various post-conviction claims he raised in his Section 440.10 motion, as his time for seeking such leave has long expired. *See* N.Y.C.P.L. § 460.10 (4)(a) (to appeal denial of Section 440.10 motion, a defendant must seek leave to appeal within 30 days of service of the decision to be appealed); *Thomas v. Greiner*, 111 F. Supp. 2d 271, 278 (S.D.N.Y. 2000).[11] Nor can Petitioner now seek leave to appeal from the Appellate Division's January 2001 denial of his mandamus application, as, once again, his time for doing so would be long past. *See* N.Y.C.P.L.R. § 5513; *Eiland v. Conway*, No. 03 Civ. 4208 (GEL) 2004 U.S. Dist. LEXIS 17699, at *14 n.5 (S.D.N.Y. Sept.1, 2004) ("Under N.Y.C.P.L.R. § 5513(b), a defendant must move for permission to appeal within thirty days after service upon the defendant of a copy of the order or judgment sought to be appealed . . ."). Finally, Petitioner cannot now seek leave to appeal from the Appellate Division's March 2001 decision on his direct appeal, as he would again be well past the

---

[11] Under certain circumstances, a state court can grant an extension of this 30-day deadline, if the application for the extension is made within one year of the deadline. *See* N.Y.C.P.L. § 460.30(1). As Petitioner's Section 440.10 motion was denied in July 2000, any application now to extend the deadline would be untimely.

applicable deadline.  (*See id.*)  If, as it appears, Petitioner no longer has any procedural recourse

to the state courts on his unexhausted claims, then this Court should "deem" the claims to be

exhausted.[12]  *See Bossett*, 41 F.3d at 828-29; *Grey*, 933 F.2d at 120-21.

Where a claim is deemed exhausted because of a procedural bar, "the procedural bar that

gives rise to exhaustion provides an independent and adequate state-law ground for the

conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim,

unless the petitioner can demonstrate cause and prejudice for the default," *Gray v. Netherland*,

518 U.S. 152, 162 (1996) (citations omitted); *accord Carmona v. United States Bureau of*

*Prisons*, 243 F.3d 629, 633 (2d Cir. 2001) (citations omitted), or that "failure to consider the

[defaulted] claim will result in a fundamental miscarriage of justice," *Coleman v. Thompson*,

501 U.S. 722, 750 (1991) (internal quotation marks and citations omitted).  In this instance,

Petitioner has not satisfied either standard.

 "Cause" for a procedural default is established when "some objective factor external to

the defense" impeded the petitioner's efforts to comply with the state's procedural rule.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also Ayuso v. Artuz*, No. 99 Civ. 12015 (AGS)

(JCF), 2001 WL 246437, at *8 (S.D.N.Y. Mar. 7, 2001).  Thus, cause for a default exists where a

petitioner can show that (1) "the factual or legal basis for a claim was not reasonably available to

counsel," (2) "'some interference by state officials' made compliance [with the procedural rule]

---

[12] There is some conflicting case law regarding under what circumstances, if any, it is
appropriate to deem unexhausted claims exhausted and procedurally defaulted.  *Compare, e.g.*,
*Thomas*, 111 F. Supp. 2d 271 (S.D.N.Y. 2000), *with Reyes v. Phillips,* No. 02 Civ. 7319 (LBS),
2005 WL 2173812 (S.D.N.Y. Sept. 6, 2005).  In this case, the Court need not resolve any
conflict because, even if Petitioner's unexhausted claims were not found to be procedurally
barred, the claims would, in any event, be subject to dismissal on the merits.  (*See infra* at
Section III.C; 28 U.S.C. § 2254(b)(2) (allowing the Court to dismiss an unexhausted claim for
lack of merit).)

impracticable," or (3) "the procedural default is the result of ineffective assistance of counsel." *Bossett*, 41 F.3d at 829 (citation omitted). "Prejudice" requires Petitioner to demonstrate that the alleged constitutional error worked to Petitioner's "*actual* and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). Here, Petitioner has not demonstrated any "cause" for his failure to seek leave to appeal from any of the state court decisions at issue. As Petitioner cannot show cause for his procedural default, this Court need not reach the question of whether he can show prejudice. *See Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985) ("Since a petitioner who has procedurally defaulted in state court must show both cause and prejudice in order to obtain federal habeas review, we need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [petitioner] showed prejudice.").

Petitioner also has not demonstrated "a sufficient probability that [the] failure to review his federal claim[s] will result in a fundamental miscarriage of justice." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Coleman*, 501 U.S. at 750). This exception to the procedural bar is extremely narrow; it is "concerned with actual as compared to legal innocence." *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). Further, actual innocence means "factual innocence, not mere legal insufficiency." *Rosario v. United States*, 164 F.3d 729, 733 (2d Cir. 1998) (citation omitted). To show "actual innocence," Petitioner must produce new, reliable evidence sufficient to make a "colorable showing" that "it is more likely than not that 'no reasonable juror' would have convicted [Petitioner]" in light of the new evidence. *Schlup v. Delo*, 513 U.S. 298, 329 (1995); *accord Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 114 (2d Cir. 2000). As

21

Petitioner has offered no new evidence demonstrating actual innocence, he has not made an adequate showing to satisfy the "miscarriage of justice" exception to the procedural bar.

For these reasons, Petitioner's claims should be dismissed as unexhausted and procedurally barred.

## III.   PETITIONER'S CLAIMS, IN ANY EVENT, ARE WAIVED, NON-COGNIZABLE OR WITHOUT MERIT.

Regardless of whether Petitioner's claims have been exhausted, they are in any event subject to dismissal on other grounds.  First, Petitioner's non-jurisdictional constitutional claims that predate his guilty plea are precluded by the plea.  Second, a number of Petitioner's claims, by their nature, are non-cognizable on federal habeas review.  Finally, any remaining claims that survived Petitioner's plea and are cognizable constitutional claims would, if reached by the Court, fail on their merits.

### A.    Plaintiff Is Precluded by His Guilty Plea from Raising Claims of Constitutional Violations Arising Prior To His Plea.

It is well established that:

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of his guilty plea.

*Tollett v. Henderson,* 411 U.S. 258, 267 (1973); *accord United States v. Gregg*, 463 F.3d 160, 164 (2d Cir. 2006) ("a guilty plea conclusively establishes the factual predicate for the offense to which the defendant is pleading guilty.  Therefore . . . a petitioner may not assert pre-plea constitutional violations bearing on the valid establishment of his factual guilt" (*citing Tollett*, 411 U.S. at 266); *Mena v. New York*, 423 U.S. 61, 62 n.2 (1975))).  As a valid guilty plea

"foreclose[s] direct inquiry into the merits of claimed antecedent constitutional violations," *Tollett,* 411 U.S. at 266, a defendant who has pleaded guilty is "limited in a federal habeas corpus proceeding to attacks on the voluntary and intelligent nature of the guilty plea," *Blackledge v. Perry,* 417 U.S. 21, 29-30 (1974); *accord United States v. Coffin,* 76 F.3d 494, 497 (2d Cir. 1996), or the jurisdiction of the court, *see United States v. Calderon*, 243 F.3d 587, 590 (2d Cir. 2001) ("jurisdictional errors are not waived, because they affect the basic authority of a court to hear and decide a case").

Accordingly, any habeas claim raised by Petitioner challenging the lawfulness of his arrest (*see* claims 1-3) is precluded, as is any claim that his indictment was not supported by sufficient evidence (*see* claim 9).  *See Lugo v. Artuz*, No. 05 Civ. 1998 (SAS), 2006 U.S. Dist. LEXIS 59993, *17 n.48 (S.D.N.Y. Aug. 22, 2006) ("a knowing and voluntary guilty plea waives Fourth Amendment claims"); *Whitehurst v. Senkowski,* 485 F. Supp. 2d. 105, 118 (S.D.N.Y. 2007) (holding that a habeas challenge to the evidence used to obtain the petitioner's indictment was precluded by the petitioner's guilty plea).  Likewise, Petitioner cannot challenge the conduct of the prosecutor (*see* claim 4) or the effectiveness of his trial counsel prior to his plea (*see* claim 8), other than to claim that, as a result of the prosecutor's conduct and/or his counsel's advice, his plea was not knowing and voluntary.

### B.   Most of Petitioner's Claims Are Also Not Cognizable in a Federal Habeas Proceeding

#### 1.   Claims 1-3 (Challenging the Legality of Petitioner's Arrest)

Petitioner's first three claims all appear to challenge the legality of Petitioner's arrest.  In particular, Petitioner's first two claims challenge whether the police had probable cause to stop him on two separate occasions prior to (and presumably leading up to) his arrest, while his third

claim challenges that the felony complaint that was filed against him upon his arrest resulted

from unlawful "profiling."  (*See* Am. Pet, at 7-8.)  Although Petitioner does not state the

constitutional basis of any of these claims, the Court liberally construes these claims[13] as raising

Fourth Amendment challenges to the police conduct at issue.  *See, e.g., Sansalone v. Kuhlmann,*

No. 96 Civ. 9231 (BDP), 1998 U.S. Dist. LEXIS 18247, at *3 (S.D.N.Y. Nov. 16, 1998) (claim

of an "unlawful stop" was a Fourth Amendment claim); *Smith v. Pearlman,* No. 01-CV-5835

(JG), 2003 U.S. Dist. LEXIS 12885, at *1, 7 (E.D.N.Y. July 15, 2003) (construing claim that

petitioner's arrest was due to racial profiling as a Fourth Amendment claim).

Fourth Amendment claims, however, can only be heard in this Court if the State failed to

provide an opportunity for the "full and fair litigation" of the claims.  *See Stone v. Powell*, 428

U.S. 465, 494 (1976).  Since *Stone*, the Second Circuit has developed a "litmus test" to evaluate

whether a state defendant has been denied an adequate opportunity to litigate a Fourth

Amendment claim:  such denial occurs (and, thus, federal habeas review is warranted) only

where (a) "the state has provided no corrective procedures to redress the alleged fourth

amendment violations," or (b) "the State has provided a corrective mechanism, but the defendant

was precluded from using that mechanism because of an unconscionable breakdown in the

underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (citing *Gates v.*

*Henderson*, 568 F.2d 830, 840 (2d Cir. 1977)).

---

[13] *See Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995) ("[t]he complaint of a *pro se* litigant is to be liberally construed in his favor") (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983) (where a petitioner is proceeding *pro se* and "lack[s] expertise," the Court "should review [his] habeas petition[] with a lenient eye"); *see, e.g., Akinlade v. United States*, 213 F.3d 625 (Table), No. 99-2645, 2000 U.S. App. LEXIS 9858, at *5 (2d Cir. May 11, 2000) (applying liberal interpretation rule to § 2241 habeas petition).

Here, as Respondent notes (*see* Resp. Mem. at 18-19), Petitioner initially made a pre-trial motion to suppress evidence seized from him following his arrest.  The trial court held an evidentiary hearing, following which it concluded that Petitioner's arrest was valid.  Petitioner then argued in a Section 440.10 motion that the police lacked probable cause to arrest him, and that argument was heard by the court, as well, and rejected.  Thus, Petitioner was not only initially provided with a "corrective procedure" by the State to address any alleged Fourth Amendment violations, but, through the mechanism of post-conviction review, he was provided with a further corrective procedure to safeguard his rights more fully.  Under these circumstances, this Court has no basis for finding any "unconscionable breakdown" in process, and, accordingly, to the extent Petitioner is attempting to assert Fourth Amendment claims in this case, such claims are not cognizable in this Court and should be dismissed.

### 2.  Claims 6, 7 and 10 (Challenging the Manner in Which the Trial Court Disposed of Petitioner's Section 440.10 Motion)

Petitioner's sixth and 10th claims relate to the question of whether the trial court violated Petitioner's right to due process, either by denying him a hearing on his Section 440.10 motion or by failing to investigate his claims before denying the motion.  In his seventh claim, Petitioner further suggests that the Appellate Division erroneously denied his appeal after the trial court failed to conduct the evidentiary hearing that, to Petitioner's understanding, had been previously ordered by the appellate court.  Each of these claims, at its core, arises from the manner in which the trial court conducted its post-conviction review of Petitioner's claims.

Yet, as no constitutional provision requires a state to grant post-conviction review, *Pennsylvania v. Finley*, 481 U.S. 551, 556-57 (1987), most federal courts have rejected due process claims arising out of the conduct of state post-conviction proceedings, holding that such

claims are not cognizable on habeas review.[14]  "While the Second Circuit has not directly

addressed this issue, district court decisions within the Circuit (several of which have been

affirmed by the Second Circuit) have followed [this] majority rule."  *Jones v. Duncan*, 162 F.

Supp. 2d 204, 217-19 (S.D.N.Y. 2001).

Indeed, this Court has explicitly held that a trial court's denial of a hearing in a Section

440.10 motion cannot provide the basis for a cognizable habeas claim.  *See, e.g., Manning v.*

*Fischer*, No. 06 Civ. 2052 (NRB), 2006 U.S. Dist. LEXIS 85624, at *27 (S.D.N.Y. Nov. 22,

2006) (rejecting such a claim on the basis that "[f]ederal habeas relief is not available to redress

alleged procedural errors in state post-conviction proceedings" (citing *Funches v. Walsh*, 2006

U.S. Dist. LEXIS 22103, at *39 (S.D.N.Y. Apr. 21, 2006))); *Jones,* 162 F. Supp. 2d at 219

(petitioner's "assertion that the failure to hold a hearing on his CPL §§ 440.10 and 330.30 newly

---

[14] *See Golden v. Kaiser*, 246 F.3d 680 (Table), No. 00-6315, 2001 WL 15526, at *1 (10th Cir. Jan. 8, 2001) ("claims relat[ing] to alleged deficiencies in [the state's] post-conviction procedures, fail[] to present a viable habeas claim") (citation omitted); *Villafuerte v. Stewart*, 111 F.3d 616, 632 n.7 (9th Cir. 1997) (claim that petitioner was denied due process in state habeas proceeding is "not addressable in a section 2254 proceeding") (citation omitted); *Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996) ("Unless state collateral review violates some independent constitutional right, such as the Equal Protection Clause, . . . errors in state collateral review cannot form the basis for federal habeas corpus relief.") (citations omitted); *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on a state habeas proceeding does not entitle the petitioner to [federal] habeas relief in respect to his conviction, as it 'is an attack on a proceeding collateral to the detention and not the detention itself.'") (citations omitted); *Williams-Bey v. Trickey*, 894 F.2d 314, 317 (8th Cir. 1990) ("Section 2254 only authorizes federal courts to review the constitutionality of a state criminal conviction, not infirmities in a state post-conviction relief proceeding.") (citation omitted); *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988); *Kirby v. Dutton*, 794 F.2d 245, 246-48 (6th Cir. 1986).  Only the First Circuit appears to have held otherwise, *see, e.g., Dickerson v. Walsh*, 750 F.2d 150, 152-54 (1st Cir. 1984), and the validity of that decision has been questioned within that circuit, *see Mathison v. Cunningham*, No. Civ. 98-457-M, 2000 WL 1745081, at *4 (D.N.H. Oct. 19, 2000) ("even if *Dickerson* remains good law, . . . petitioner cannot utilize the writ of habeas corpus to litigate what he perceives to have been errors of judgment made by the judge presiding over his state habeas petition that are not of constitutional magnitude") (citation omitted).

discovered evidence motions violated due process is not cognizable on federal habeas review");

*Diaz v. Greiner*, 110 F. Supp. 2d 225, 236 (S.D.N.Y. 2000) ("Petitioner's unsupported assertion

that the trial court denied his (third) CPL § 440.10 motion without a hearing violated due process

is not cognizable on federal habeas review." (citation omitted)).

　　　　As Petitioner's claims that the trial court should have held a hearing on his post-

conviction motion and should have conducted an investigation as to the status of a laboratory

drug analysis are not subject to review in this proceeding, these claims should be dismissed.

### 3.　　Claim 9 (Challenging the Sufficiency of the Evidence Supporting the Indictment)

　　　　The right to have state charges presented to a grand jury is a state-created right, not a

federal right.  *See Alexander v. Louisiana,* 405 U.S. 625, 633 (1972) ("Although the Due Process

Clause [of the Fourteenth Amendment] guarantees petitioner a fair trial, it does not require the

States to observe the Fifth Amendment's provision for presentment or indictment by a grand

jury").  Accordingly, it is well-established that "habeas corpus is not available to test the

sufficiency of the indictment."  *United States ex rel Mintzer v. Dros,* 403 F.2d 42, 43 (2d Cir.

1967); *accord Kellam v. Hunt,* No. 06 Civ. 4395 (JGK), 2007 U.S. Dist. LEXIS 49946, at *13-14

(S.D.N.Y. July 10, 2007) ("the petitioner's . . . claim, that the evidence before the Grand Jury

was legally insufficient, is not cognizable because a challenge to the sufficiency of a state

indictment is not a claim cognizable on habeas review" (citing *Mintzer*, 403 F.2d at 43));

*Medina v. Herbert*, No. 98 Civ. 1871, 1998 U.S. Dist. LEXIS 18007, at *13 (S.D.N.Y. Nov. 12,

1998) ("challenges to the sufficiency of a state indictment are not issues cognizable on habeas

review").

In order for a challenge to the sufficiency of an indictment to form the basis for a federal writ of habeas corpus, the indictment must fall "below basic constitutional standards," *Carroll v. Hoke*, 695 F. Supp. 1435, 1438 (E.D.N.Y. 1988), which will only be found where the indictment fails to charge a crime with sufficient detail to inform the defendant of the charges he must meet, and with enough detail that he may assert double jeopardy in a future prosecution based on the same events, *De Vonish v. Keane*, 19 F.3d 107, 108 (2d Cir. 1994) (citations omitted); *accord United States v. Stavroulakis,* 952 F.2d 686, 693 (2d Cir. 1992).

An allegation like the one made by Petitioner in his ninth habeas claim – that the evidence presented before the grand jury was insufficient to support the indictment – does not suggest any failure to meet constitutional standards, and thus cannot be reviewed by this Court. *See Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) (rejecting as non-cognizable on federal habeas review a claim that an indictment was not supported by sufficient evidence); *see also Jones v. Artuz*, No. 97 Civ. 2063 (NG), 2002 U.S. Dist. LEXIS 16603, at *9-10 (E.D.N.Y. Aug. 30, 2002) (holding a claim that false testimony was presented before the grand jury to be non-cognizable on federal habeas).

For these reasons, I recommend that Petitioner's ninth claim be dismissed.

## C.      The Remainder of Petitioner's Claims Lack Merit.

The remainder of Petitioner's claims fall into two categories:  claims challenging the jurisdiction of the trial court to accept Petitioner's plea and then to sentence him (claims 4-5), and, liberally construed, a claim that Petitioner's plea was not knowing and voluntary, as Petitioner chose to plead only after the court and his counsel had encouraged him to do so, based on a false statement by the prosecutor as to a laboratory report having been timely made (*see*

claim 4).  The trial court rejected Petitioner's jurisdiction claims on the merits, and Petitioner has

presented no basis for this Court to disturb that determination under the deferential standard of

review that would apply, were this Court to reach these claims.  While it is less clear that

Petitioner ever raised a claim before the state court that his plea was not knowing and voluntary,

or that any state court actually decided such a claim, any such claim would also fail on the

merits, even on *de novo* review.

### 1.        Standard of Review

Where federal constitutional claims have been adjudicated on the merits by the state

court, this Court must accord substantial deference to the state court's decision under the

standard of review dictated by AEDPA.  *See* 28 U.S.C. § 2254(d); *Sellan v. Kuhlman*, 261 F.3d

303, 311 (2d Cir. 2001) (noting that "adjudicated on the merits" means "a decision finally

resolving the parties' claims, with *res judicata* effect, that is based on the substance of the claim

advanced, rather than on a procedural, or other, ground").  The relevant section of AEDPA

provides that:

> [a]n application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim – (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).

Under AEDPA, a state court decision is "contrary to" clearly established federal law

where the state court either applies a rule that "contradicts the governing law" set forth in

Supreme Court precedent or "confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision" and arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).   An "unreasonable application" of clearly established federal law occurs when the state court identifies the correct governing legal principle, but unreasonably applies that principle to "a set of facts different from those of the case in which the principle was announced." *Lockyer v. Andrade*, 538 U.S. 63, 73-76 (2003).   In other words, "the state court's decision must have been more than incorrect or erroneous" – rather, "[t]he state court's application must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (quoting *Williams*, 529 U.S. at 409).

AEDPA also provides that, where not manifestly unreasonable, a state court's factual findings are presumed correct, and can only be rebutted by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Further, a federal court reviewing a habeas petition may not revisit the state fact-finder's credibility determinations. *See Jackson v. Conway*, 448 F. Supp. 2d 484, 495 (W.D.N.Y. 2006) (citing *Marshall v. Lonberger*, 459 U.S. 422, 432-35 (1983)).

Where this Court reaches the merits of a claim that has not been decided by the state court on substantive grounds, the pre-AEDPA *de novo* standard of review applies. *See Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003).

### 2.        Petitioner's Remaining Claims

### a.        Claims 4-5 (Challenging the Trial Court's Jurisdiction)

In his fourth and fifth claims, Petitioner primarily alleges that the trial court did not have jurisdiction over him during the plea and sentencing phases of his case because no laboratory drug analysis had been timely conducted to confirm that he sold illegal drugs.

The state trial court rejected Petitioner's jurisdictional arguments, reasoning that the prosecution was under no obligation to present the results of a formal laboratory drug analysis to the Grand Jury in order to establish a *prima facie* case or to obtain a legally sufficient indictment. (*See* Chanda Decl., Ex. F, at 2-3.)  The court cited N.Y.C.P.L. § 190.30(2) for the proposition that such a report may be presented to the Grand Jury, but is not required.  In addition, the court held that a positive field test by itself is legally sufficient evidence to support the indictment. (*See id.* at 2) (citing *People v. Swamp*, 84 N.Y.2d 725, 731 (1995)).  Nonetheless, Petitioner continues to maintain that the State's failure to perform a timely laboratory analysis deprived the trial court of jurisdiction.

Under New York statutory law, a New York Supreme Court has jurisdiction over all felonies that occur in the county in which it sits.  *See* N.Y.C.P.L. §§ 10.20, 20.40; *see also* N.Y. Const. Art. VI, § 7.  The term jurisdiction refers to "the courts' statutory or constitutional power to adjudicate the case."  *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 89 (1998). Significantly, "defects in an indictment do not deprive a court of its power to adjudicate a case." *United States v. Cotton*, 535 U.S. 625, 630 (2002) (failure to specify quantity of drugs in indictment did not deprive court of jurisdiction); *see also Graham v. Holder,* 177 Fed. Appx. 50, 51 n.1 (11th Cir. 2006) (habeas petitioner was "flatly incorrect to assert that his allegedly insufficient indictment constituted a jurisdictional defect") (citing *Cotton*, 535 U.S. at 630-631; *Sapia v. United States*, 433 F.3d 212, 217 (2d Cir. 2005) (rule requiring the timely filing of a felony information "'has nothing to do with [a court's] subject-matter jurisdiction' over a criminal case or a court's general power to impose a sentence" (quoting *United States v. Ceballos*, 302 F.3d 679, 692 (7th Cir. 2002))).

The fact that the State's failure to file a laboratory drug analysis within the time dictated by N.Y.C.P.L. § 715.50 did not divest the trial court of jurisdiction is underscored by the language of the statute itself, which provides that "[t]he failure to have an analysis made . . .within the time specified . . . shall not be . . . construed to bar . . . the prosecution of a case involving such drugs."  N.Y.C.P.L. § 715.50(3); *see also Watts v. New York State Criminal Supreme Court,* No. 05 Civ. 4181 (SAS), 2006 U.S. Dist. LEXIS 78499, at *26-27 (S.D.N.Y. Oct. 26, 2006).  Given the explicit terms of this statute, and the lack of any other support for Petitioner's argument that the State's non-compliance with the statute affected the court's power to adjudicate his case, the state court's rejection of Petitioner's jurisdiction claims was neither contrary to, nor an unreasonable application of, federal law.  Accordingly, should the Court reach the merits of these claims, they should be dismissed under AEDPA.  *See* 28 U.S.C. § 2254(d).

### b.  Claim 4 (Liberally Construed, Alleging that Petitioner's Plea Was Not Knowing and Voluntary)

Finally, Petitioner alleges that the prosecutor "coerced' him into pleading guilty by misrepresenting that the government had conducted a laboratory drug analysis within 45 days of his arrest.[15]  (*See, e.g.,* Pet. ¶ 6 (conviction was coerced), ¶ 14 ("the prosecutor . . . coerced the petitioner into a plea of guilty unknowingly").)  Liberally construing these allegations, they arguably present a due process claim that, because Petitioner relied on a false statement by the prosecutor in deciding to plead guilty, Petitioner's plea was not voluntary and intelligent.  As it

---

[15] As noted above, the laboratory analysis appears to have been conducted on the day that Petitioner accepted the plea offer.  (*See supra* at n.3.)

is not apparent that the state court ever considered a claim framed in these terms, this Court will examine this potential claim *de novo*.

"It is a settled principle of federal constitutional law that a guilty plea violates due process and is therefore invalid if not entered voluntarily and intelligently." *Wilson v. McGinnis*, 413 F.3d 196, 199 (2d Cir. 2005) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)); *see also Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) ("A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" (quoting *Brady*, 397 U.S. at 748)). "As a general matter, a plea is deemed 'intelligent' if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way; it is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988) (citing *Brady*, 397 U.S. at 750); *accord Bastien v. William*, No. 03 Civ. 5749 (DLC), 2004 U.S. Dist. LEXIS 25631, at *10 (S.D.N.Y. Dec. 17, 2004).

Under certain circumstances, a defendant's reliance on a misrepresentation by the prosecution can render a plea invalid. *See Brady*, 397 U.S. at 755 ("A plea of guilty entered by one fully aware of the direct consequences . . . . must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes)." (internal quotation marks and citation omitted)); *see also Bousley v. United States*, 523 U.S. 614, 619 (1998) (a plea of guilty entered

by one fully aware of the direct consequences of the plea is voluntary in a constitutional sense unless induced by, *inter alia*, misrepresentation).  The mere existence of evidence that some type of misrepresentation was made, however, is insufficient to invalidate a guilty plea.  Rather, the Court must employ a two-part test to determine if the plea should be set aside:  "First, [the petitioner] must show that some egregiously impermissible conduct (say, threats, blatant misrepresentations, or untoward blandishments by government agents) antedated the entry of his plea . . . .  Second, [the petitioner] must show that the misconduct influenced his decision to plead guilty or, put another way, that it was material to that choice."  *Ferrara v. United States*, 456 F.3d 278, 290 (1st Cir. 2006) (granting habeas relief where the government failed to disclose that a key witness had recanted prior to defendant's acceptance of a plea) (citing *Brady*, 397 U.S. at 755).

     In other words, Petitioner must show more than that the prosecutor in this case made a "blatant misrepresentation" – he "also must show a 'reasonable probability that, but for [the misconduct], he would not have pleaded guilty and would have insisted on going to trial.'"  *Id.* at 294 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).  The question of whether a petitioner would have pleaded guilty in the absence of the misrepresentation is analyzed from the perspective of "a reasonable defendant standing in the petitioner's shoes."  *Id.* at 294 (citing *Miller v. Angliker*, 848 F.2d 1312, 1322 (2d Cir. 1988)).

     Here, as a preliminary matter, it would not have been objectively reasonable for Petitioner to have assumed that the indictment against him would have been dismissed, had the prosecution conceded that no laboratory drug analysis was timely performed.  On the contrary, New York law, at the time, was well settled that an indictment can be sufficiently supported by

the grand jury testimony of an experienced police officer and a positive field test of the drugs, *see People v. Swamp,* 84 N.Y.2d 725, 622 N.Y.S.2d 472 (1995), both of which were present in this case.  Further, as discussed above, the drug-testing statute itself provides that any failure to meet its deadlines is not to be "deemed or construed to bar . . . the prosecution of a case involving such drugs."  N.Y.C.P.L. § 715.50(3).

Moreover, there is no evidence in the record to suggest that, at the time of Petitioner's plea, the drugs at issue had been lost, or that belated testing was otherwise impossible.  In fact, the evidence submitted to this Court by Petitioner shows that a laboratory drug analysis was in fact performed on the same day that Petitioner plead guilty, even if it was not performed in a timely fashion.  Thus, Petitioner would have had no reason to believe that the State could not have been ready for trial in his case.  *See People v. Van Hoesen,* 12 A.D.3d 5, 9 (3rd Dep't 2004), *appeal denied,* 4 N.Y.3d 804, 828 (N.Y. 2005) (holding that the State's failure to conduct laboratory drug testing until three days before trial "ha[d] no bearing" on its ability to be ready for trial).  There is also no evidence in the plea proceedings or earlier records to suggest that, as a result of any delay in testing, the prosecution would have been barred from introducing evidence at trial regarding the type and quantity of the drugs in question.  Under *People v. Coleman*, 306 A.D.2d 549 (3rd Dep't 2003), "[a]bsent bad faith or prejudice to defendant due to [such] delay, . . . the People may still present evidence regarding the nature and amount of the drugs." *Id.* at 549-50.  In this case, while Petitioner has demonstrated that the prosecutor made a misstatement to the trial court as to whether a laboratory analysis had been timely conducted, Petitioner has not made any showing that the prosecutor deliberately made a false statement so

as to mislead Petitioner or the court, or that Petitioner would have suffered any prejudice whatsoever from the State's delay in testing.

In the absence of any evidence of actual bad faith or prejudice from the testing delay, Petitioner has not shown a "reasonable probability" that, had a "reasonable defendant standing in [his] shoes" known that the drugs had not yet been tested at the time of his plea, such a defendant would have "insisted on going to trial." *Ferrara*, 456 F.3d at 294.  Accordingly, this Court cannot conclude that the prosecutor's misrepresentation as to the status of the drug testing was "material" to Petitioner's decision to plead guilty, in that it reasonably induced him to plead guilty when he otherwise would not have done so.  For this reason, to the extent Petitioner is attempting to assert a claim challenging the knowing and voluntary nature of his plea, any such claim would be without merit.

## **CONCLUSION**

For the foregoing reasons, I recommend that Petitioner's petition for a writ of habeas corpus be DISMISSED in its entirety.  Further, I recommend that the Court decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A), because Petitioner has not "made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Barbara S. Jones, United States Courthouse, 500 Pearl Street, Room 620, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street,

Room 525, New York, New York, 10007.  Any requests for an extension of time for filing

objections must be directed to Judge Jones.  FAILURE TO FILE OBJECTIONS WITHIN

TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE

APPELLATE REVIEW.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension*

*Fund v. Hermann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d

Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714

F.2d 234, 237-38 (2d Cir. 1983).

Dated:  New York, New York
        November 14, 2007

                                        Respectfully submitted,


                                        _____
                                        DEBRA FREEMAN
                                        United States Magistrate Judge


Copies to:

Mr. Benjamin Holmes
aka Benjamin Washington
06R1741
6100 School Road
P.O. Box 8451
Rome, NY  13442

Malancha Chanda, Esq.
Assistant Attorney General
Habeas Corpus Section
120 Broadway
New York, NY  10271